IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAFIA GROOMS,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 10-5178** |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                                                       **September 28, 2012**

This case arises from the March 16, 2009, fatal shooting of Sontosh Clarke by Philadelphia Police Officer Britton Brown. Plaintiff Rafia Grooms, Clarke's mother, brings this action under 42 U.S.C. § 1983 and Pennsylvania state law.[1] Grooms alleges Brown used excessive force in his encounter with Clarke. Brown seeks summary judgment on all claims. For the following reasons, I will deny Brown's motion.

**I.      BACKGROUND**[2]

On the evening of March 16, 2009, Philadelphia Police Officers Britton Brown and Arthur Lee attempted stop a vehicle driven by Sontosh Clarke for a traffic violation.[3] (Doc. No. 22,[4] Ex. A, ¶ 6.) Clarke pulled into a driveway, exited the vehicle, and fled. (Id. at ¶ 9.) Brown pursued Clarke on foot while Lee stayed with the patrol car. (Id. at ¶ 11.)

---

[1] Grooms also sued the City of Philadelphia; however, she now stipulates to its dismissal. Accordingly, the City of Philadelphia is dismissed.
[2] Under Rule 56 of the Federal Rules of Civil Procedure, I must draw "all justifiable inferences" in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
[3] Unknown to Brown and Lee at the time, Clarke was driving a stolen vehicle.
[4] Defendant's Statement of Undisputed Facts.

The parties vigorously dispute what took place next. Brown, the only witness to the shooting, testified to the following basic facts. After a short pursuit, Brown struck Clarke from behind with his ASP baton; Clarke turned and confronted Brown. (Brown Dep. at 39-40.) Clarke "stripped" Brown of his baton, and the two men engaged one another, first on their feet and then on the ground. (Id. at 43-46.) Brown maneuvered himself onto Clarke's back, with Clarke's face to the ground. (Id. at 59-62.) As Brown reached for his handcuffs, Clarke managed to flip Brown onto his back, bringing the men face to face. (Id. at 67-71.) Clarke, now on top, grabbed Brown's neck and began punching Brown's head. (Id. at 74-76.) Brown claims Clarke was "pushing down very hard" on his neck. (Id.) Brown unholstered his weapon with his right hand after he began having trouble breathing and started seeing spots. (Id. at 80-82.) Clarke grabbed Brown's right wrist. (Id. at 84-85.) Brown, fearing Clarke was attempting to take his weapon, began thrashing his body and kicking his legs. (Id. at 86-87.) After freeing his right hand from Clarke's grip, Brown fired three shots, all of which struck Clarke. (Id.) Clarke died minutes later; he was unarmed throughout the encounter.

With no witnesses to rely on, Grooms bases her version of the facts on physical evidence and perceived inconsistencies in Brown's recollection. Grooms notes that Officer James Edmiston and Lieutenant David Merrick, both of whom observed Brown after the shooting, testified that Brown had no visible injuries to his head, face, or neck. (Edmiston Dep. at 19; Merrick Dep at. 40-41.) Officer Lee testified that he observed "redness," but no bruising, around Brown's neck and jaw. (Lee Dep. at 56-57.) Brown himself testified that, although the top of his head felt "very tender," he didn't notice any

2

wounds to his face or neck.  (Brown Dep. at 111-12.)  Brown also stated he was having trouble breathing before Clarke grabbed his throat.  (Id. at 80.)  Grooms argues this testimony is inconsistent with Brown's assertion that Clarke was forcefully choking and punching him.  Grooms also disputes Brown's recollection of the shooting.  Clarke was shot twice in the chest and once in the back.  (Gulino Dep. at 10-18.)  Brown testified that he couldn't recall the position of Clarke's body during the shooting:

> Q: When you fired your weapon at Mr. Clarke he was trying to get away from you, wasn't he?
>
> A: I don't know.
>
> Q: He was on his feet?
>
> A: I don't know.
>
> Q: At some point when you were firing, his back was turned to you?
>
> A: I don't know.

(Brown Dep. at 113-14; see also id. at 92, 130.)  Brown stated that all he saw was "a body, like a white shirt," since he "just fired and turned away."  (Id. at 91.)  Grooms also points to the testimony of Dr. Gulino, the chief medical examiner for the City of Philadelphia.  Dr. Gulino testified that the lack of soot or gunpowder stippling on Clarke's body suggests that Brown fired his weapon at least two feet away from Clarke.  (Gulino Dep. at 28.)   Grooms argues that a reasonable jury could conclude from these facts that Clarke never posed a deadly threat to Brown and that Brown shot Clarke as he attempted to flee.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"[S]ince the victim of deadly force is unable to testify, courts should be cautious on summary judgment to 'ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify.'"  Abraham v. Raso, 183 F.3d 279, 294 (3d Cir. 1999) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)).  "'[T]he court may not simply accept what may be a self-serving account by the officer.  It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officer acted unreasonably.'"  Id. "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."  Abraham, 183 F.3d at 287.

"This is not to say that the summary judgment standard should be applied with extra rigor in deadly-force cases."  Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011).  "Just as in a run-of-the-mill civil action, the party opposing summary judgment in a deadly-force case must point to evidence—whether direct or circumstantial—that

4

creates a genuine issue of material fact, "'and may not rely simply on the assertion that a reasonable jury could discredit the opponent[s'] account.'" Id. (quoting Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003)).

## III. DISCUSSION

### A. Grooms' § 1983 Claim[5]

Brown seeks summary judgment on Grooms' claim of excessive force, contending he is qualifiedly immune from suit. For the reasons discussed below, I will deny Brown's motion.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether an officer is qualifiedly immune from suit, a court must ask (1) whether the officer violated a constitutional right, and if so, (2) whether the right was clearly established. See Saucier v. Katz, 533 U.S. 194, 201–02 (2001). I first address whether Brown's use of deadly force violated the Fourth Amendment.[6]

---

[5] 42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." In short, § 1983 "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).

[6] Although I am no longer required to consider the constitutional issue before the "clearly established" issue, the Supreme Court has recognized that it is "often beneficial" to do so. Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

### 1. Excessive Force

Claims of excessive force are analyzed under the Fourth Amendment.  See Graham v. Connor, 490 U.S. 386, 393–94 (1989).  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures."  To prevail on a claim of excessive force, a plaintiff must show that a seizure occurred and that it was unreasonable.  See Abraham, 183 F.3d at 288.  Clarke was seized when Brown shot him.  See Tennessee v. Garner, 471 U.S. 1 (1985).  The only question is whether the seizure was reasonable.

An officer's use of deadly force is reasonable only where "it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  Garner, 471 U.S. at 3.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and in light of the "totality of the circumstances."  Graham, 490 U.S. at 396.  Making this determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[7]  Graham, 490 U.S. at 396.  The basic question is as follows: "Giving due regard to the pressures faced by the police, was it objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to

---

[7] The Third Circuit adds to this list "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others?" Abraham , 183 F.3d at 289.

Brown is not entitled to summary judgment because genuine issues of material fact exist regarding whether his use of deadly force was reasonable under the circumstances. Although it is uncontested that Clarke was resisting arrest at the time of the shooting, "this factor alone cannot justify the use of deadly force." Plaza-Bonilla v. Cortazzo, CIV.A.07-2045, 2009 WL 605909 (E.D. Pa. Mar. 9, 2009). Grooms has pointed to evidence that, when viewed in her favor, suggests Brown's use of deadly force may have been unreasonable. Clarke was unarmed. There is testimony suggesting that Clarke's assault on Brown's head and neck was not, perhaps, as serious as Brown alleges. Brown cannot recall where Clarke's body was in relation to his at the time of the shooting, and Clarke was shot once in the back possibly at a range of two feet or more. Finally, Brown is the only witness to the shooting. As a result, "a jury will have to make credibility judgments, and credibility determinations should not be made on summary judgment." Abraham, 183 F.3d at 294.

### 2. Qualified Immunity

Having concluded that a jury could find Brown violated Clarke's Fourth Amendment right to be free from excessive force, I now proceed to the second prong of Saucier's qualified immunity analysis: whether that right was clearly established.

The inquiry for qualified immunity is distinct from that for excessive force. Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004). An officer is entitled to qualified immunity if the right at issue was clearly established at the time the

violation occurred; that is, if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful."[8] Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002).

Unlike the reasonableness-of-force inquiry, which is usually a question for the jury, an officer's eligibility for qualified immunity is a question of law exclusively for the court. Carswell, 381 F.3d at 242; see also Curley v. Klem, 499 F.3d 199, 211 n.12 (3d Cir. 2007). "The jury, however, determines disputed historical facts material to the qualified immunity question." Carswell, 381 F.3d at 242. "A decision as to qualified immunity is 'premature when there are unresolved disputes of historical facts relevant to the immunity analysis.'" Phillips v. County of Allegheny, 515 F.3d 224, 242 (3d Cir. 2008) (quoting Curley v. Klem, 298 F.3d 271, 277-78 (3d Cir. 2002)).

As with the excessive force inquiry, disputed issues of material fact preclude summary judgment on Brown's assertion of qualified immunity. Determining what would have been clear to a reasonable officer in Brown's situation requires a clear view of the situation, something which is not presently before me. As indicated, disputed factual issues relevant to this inquiry include the seriousness of the threat Clarke posed to Brown and Clarke's possible disengagement or retreat at the time of the shooting. A jury

---

[8] Put another way, the constitutional question asks "whether the officer made a reasonable mistake of fact," while the qualified immunity question asks "whether the officer was reasonably mistaken about the state of the law." Curley, 499 F.3d at 214.

must resolve these factual issues. I will defer consideration of Brown's qualified immunity defense until one does so.

### B. Grooms' State Law Claims

Grooms also brings wrongful death and survival claims against Brown pursuant to Pennsylvania state law. See 42 Pa. Cons. Stat. Ann. §§ 8301(a), 8302. Brown argues, unopposed, that he is immune to these claims under the Pennsylvania Political Subdivision Tort Claims Act (PSTCA). See Def.'s Mot. for Summ. J. at 18-19.

The PSTCA provides legal immunity for government employees unless their conduct constituted a "crime, actual fraud, actual malice or willful misconduct." See 42 Pa. Con. Stat. Ann. §§ 8545, 8550. Brown contends that his conduct does not fall within one of these categories and that he is therefore immune.

As with Brown's claim of excessive force under § 1983, disputes of material fact preclude summary judgment on Grooms' state law claims. Similar to a Fourth Amendment claim, Brown's immunity under the PSTCA will hinge on the reasonableness of the force used, which is a determination I cannot make at this time. See, e.g., Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 539 (E.D. Pa. 2009).

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

An appropriate Order follows.